

U.S. Department of Justice

United States Attorney
Eastern District of New York

JRS/DR/SMS
F. #2021R00129

271 Cadman Plaza East
Brooklyn, New York 11201

May 23, 2024

By ECF

The Honorable William F. Kuntz, II
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Jean Fremont
                Criminal Docket No. 20-293 (S-1) (WFK)

Dear Judge Kuntz:

      The government respectfully submits this letter in connection with the defendant's sentencing, currently scheduled for May 30, 2024, at 12:00 p.m.  The government respectfully submits that a sentence of 420 months' imprisonment would be sufficient but not greater than necessary to achieve the goals of sentencing this defendant.

I.      Background

      A.      The November 2020 Shootings

      The defendant is a member and leader of the Folk Nation Gangster Disciples ("GD"), specifically the "No Love City" ("NLC") set of GD.  The defendant was one of several participants in a series of four shootings occurring on November 7 and 9, 2020, committed by members and associates of NLC.  See Presentence Investigation Report ("PSR") ¶¶ 11-41.

      As proven at trial, on the night of November 6, 2020, or the morning of November 7, 2020, a chain with a pendant with the letters "SPMB" that was closely associated with NLC leader Javanni Moise, also known as "Bills," was stolen by gang rivals from the defendant, who is also known as "Juno."  See Trial Tr. 557-58, 592, 601; GX201; GX9024; GX16104D; GX16104D_1; GX21006; GX22003; GX22004.  This theft led to widespread mockery of NLC, including on social media by a rival gang member with Instagram username "Mikey_Bands".  See GX19402; GX21006; GX22003; GX22004.  In response, members of NLC decided to retaliate by engaging in a series of shootings in rival gang territory.  See Trial Tr. 630-31; GX16104A; GX16104D.

      On November 7, 2020, the defendant and co-defendants Lorenzo Bailey; Quincy Battice, also known as "Hush Dinero" and "Loon"; Oluwagbenga Agoro, also known as "Gee

Banga"; and Deryck Thompson, also known as "Benzo," engaged in two shootings. In both shootings, the defendant was in the shooter car, along with Battice, who drove, Bailey and Thompson, while two other cars served as decoys to help the shooter car escape following each shooting.[1] PSR ¶ 35. At the first shooting, the men shot at a crowd of people in Canarsie — home to NLC's rivals — but injured no one.

After the first shooting the cars drove to Thompson's house, where Thompson briefly went inside and then came back out, getting back into the car with the defendant, Bailey and Battice. Because ballistics analysis indicates that at least two firearms used at the second November 7 shooting were not used at the first shooting (GX99), it is likely that during this stop that Thompson obtained a new firearm.

The cars then drove to a second shooting, just over an hour later, where the men shot into a second crowd of people in Canarsie, injuring two individuals. Id. After the shooting, Thompson texted with NLC leader Hans Destine, also known as "YL," to brag about the shootings.

>    Thompson:   Say that gang we back tn
>
>    Destine:    Ya back already
>
>    Thompson:   Yea check citizens floss ends
>
>    Destine:    Kopy
>
>    Thompson:   Ain't done tho
>
>    Destine:    Every where getting painted

In that conversation, Thompson informed Destine that they had committed a shooting in Canarsie (which the gang referred to as the "Floss" or "Flossy") and that Destine should check Citizens App (an app that allows for real-time reporting on local occurrences, including crimes) to learn the details. He also informs Destine that they are not done and are planning additional shootings ("Ain't done tho"). GX16104E.

Following the shootings, Bailey went to a party, bringing two of the guns from the shooting and a third gun with him. GX12206C. Early on the morning of November 8, police officers attempted to stop the car Bailey was riding in, leading to a high-speed chase during which the three guns were thrown out of a window of the fleeing car. Trial Tr. 1654-57, 1663-64. Although not admitted at trial, DNA from the defendant was found on one of the firearms used in the shootings.

---

[1] An uncharged individual drove a second decoy car.

The following day, Thompson and Destine continued to exchange messages about the shootings, including a series of messages where Destine sent Thompson surveillance video of the second November 7 shooting and both men laughed about the shootings.  Id.

Nevertheless, the two November 7, 2020 shootings were considered insufficient retaliation by NLC leadership.  Destine insisted to Thompson that he wanted "a Pete" or a "Peter" (id.), a slang term for a murder (Trial Tr. 431).  Destine also reported up to incarcerated NLC leader Ronald Britton, also known as "Cam," that people were "gonna die."  GX19104.

On November 9, 2020, in the early afternoon, co-defendants Agoro, Destine, Thompson and Ricardo Hepburn set out for another round of shootings.  Hepburn drove a white BMW that carried the shooters, Agoro and Thompson, while Destine drove a decoy car.[2]  The men drove to Prospect Park South, another NLC rival territory, where Agoro and Thompson exited the car and fired a gun at one or more people, hitting no one.  PSR ¶¶ 25-28.  Later that night, Hepburn drove Agoro and Thompson to a second shooting, with the defendant and NLC associate McKoy Lima driving a decoy car.  The men drove to rival gang territory in Brownsville, where they shot into a crowd of people, striking a woman in the shoulder and back.  PSR ¶ 29.  Following that second shooting, the cars again stopped at Thompson's home, where he briefly went inside and then came back out.  Notably, ballistics analysis indicates that one unrecovered .380 firearm was used at the second November 7 shooting and both November 9 shootings.

B.     The July 24, 2020 Shooting

The defendant also appears to have been involved in the July 24, 2020 shootings described in the government's sentencing letter for co-defendant Michael Williams.  On July 24, 2020, in retaliation of a shooting of a member of GD, members of GD, including Williams, engaged in a series of shootings in rival gang territory, injuring at least four people.  In the first shooting, Williams and other individuals drove in a white BMW to Prospect Park South, where Williams and a second person got out of the car and opened fire into a crowd, striking two people, one in the knee and one in the ribcage.  Less than an hour later, the same white BMW drove to Brower Park in Crown Heights, where individuals inside the car shot at a group of men, striking two more people, one in the knee and one in the left flank and arm.

Approximately thirty minutes after the first shooting but just before the second shooting, the defendant and co-defendant Davon Brown appear to have discussed the female victim from the first shooting.

> Fremont:     She fuck with him
>
> Brown:       That's who she was fuckin with
>
> Brown:       From 18th

---

[2]     An uncharged individual drove a second decoy car.

3

| | |
|---|---|
| Brown: | She got it hit twice |
| Fremont: | Bitches soon learn |
| Brown: | Facts |

Later, within two minutes of the second shooting, the defendant and Brown exchanged the following texts suggesting that the defendant participated in the second shooting:

| | |
|---|---|
| Fremont: | Just spun [i.e., shot] brower |
| Brown: | Y'all just be easy |
| Fremont: | Dun for the night |

Brown then sent the defendant a screenshot from the phone application Citizen, which alerts users to safety-related incidents, describing the first shooting, to which the defendant responded, "Facts we told him park it up," and then, "we went to like 3 hoods with the same blicks [i.e., guns] like 5 people gonna be hit with the same strap [i.e., gun]," strongly corroborating the defendant's involvement.

A ballistics analysis determined that the same 9mm firearm had been used at both shootings described above. This same 9mm was subsequently seized from Thompson on September 6, 2020.

    C.    <u>Procedural History</u>

On August 4, 2021, the defendant was indicted for his role in the November 2020 shootings. No. 20-CR-293, ECF No. 51. He was arrested on August 10, 2021 and has been in custody since.

On November 18, 2022, following a five-week trial, a jury convicted the defendant of one count conspiracy to murder rival gang members, two counts of attempted murder in-aid-of racketeering, two counts of assault in-aid-of racketeering, one count of attempted assault in-aid-of racketeering and two counts of discharging a firearm during a crime of violence. PSR ¶¶ 1-10.

II.    <u>Sentencing Guidelines</u>

The defendant's Guidelines are as follows:

<u>Conspiracy to Murder Rival Gang Members and Attempted Assault in-aid-of Racketeering</u> (Counts Ten & Twelve)

| | |
|---|---|
| Base Offense Level (§§ 2E1.3(a)(2), 2A2.1(a)(1)) | 33 |
| Plus: Defendant was an organizer or leader (§ 3B1.1(a)) | +4 |

|  |  |
|---|---|
| Total: | <u>37</u> |

Attempted Murder in-aid-of Racketeering (Counts Thirteen & Fourteen)[3]

|  |  |
|---|---|
| Base Offense Level (§§ 2E1.3(a)(2), 2A2.1(a)(1)) | 33 |
| Plus: Defendant was an organizer or leader (§ 3B1.1(a)) | <u>+4</u> |
| Total: | <u>37</u> |

Attempted Murder in-aid-of Racketeering (Counts Eighteen & Nineteen)

|  |  |
|---|---|
| Base Offense Level (§§ 2E1.3(a)(2), 2A2.1(a)(1)) | 33 |
| Plus: Defendant was an organizer or leader (§ 3B1.1(a)) | <u>+4</u> |
| Total: | <u>37</u> |

Multiple Count Analysis (§§ 3D1.1, 3D1.4)

Highest Adjusted Offense Level: 37

|  |  | Level | Units |
|---|---|---|---|
| <u>Group 1</u>: | Counts Ten & Twelve | 37 | 1 unit |
| <u>Group 2</u>: | Count Thirteen & Fourteen | 37 | 1 unit |
| <u>Group 3</u>: | Count Eighteen & Nineteen | 37 | <u>1 unit</u> |
| Total Units |  |  | <u>3 units</u> |

|  |  |  |
|---|---|---|
| Plus: | 3 Levels (§ 3D1.4) | <u>+3</u> |
| Total: |  | <u>40</u> |

---

[3] Although it makes no difference to the defendant's ultimate Guidelines range and although the jury acquitted the defendant of Count Eleven — attempted murder in-aid-of racketeering in connection with the first November 7, 2020 shooting — the government respectfully submits that the evidence at trial established that crime by at least a preponderance of the evidence, thus justifying treating Count Twelve as an attempted murder. The government respectfully requests that the Court expressly adopt the government's Guidelines calculation, including the application of the attempted murder cross-reference on Count Twelve, as the Court did in connection with the sentencings of co-defendants Quincy Battice and Lorenzo Bailey, during which the Court found by a preponderance of the evidence that the defendants had the intent to kill.

Based on a criminal history category of V, the defendant's Guidelines range of imprisonment is 360 months to life. See PSR ¶ 131. However, because Counts 15 and 20 each requires a statutorily minimum term of imprisonment of ten years consecutive to any other counts, the effective Guidelines range is 600 months to life imprisonment.

III.    Argument

The government respectfully submits that a sentence of 420 months' imprisonment would be sufficient, but not greater than necessary, to achieve the goals of sentencing in this case.

A 420-month sentence appropriately takes into account the extraordinary seriousness of the defendant's offense. See 18 U.S.C. § 3553(a)(1), (a)(2)(A). Gang violence and gun violence are scourges afflicting the people of this city and people across the nation. The defendant participated in a premeditated and calculated effort to murder random individuals for no purpose other than defending GD's honor. In addition, the defendant appears to have been unusually violent even among members of NLC — he participated in three of the four shootings in this case and he was in the shooter car for two of them. Indeed, while the surveillance video of the November 7, 2020 shootings is not clear enough to capture who from within the car discharged firearms, ballistics and ShotSpotter evidence from the second shooting suggest that four firearms were discharged, indicating that all four individuals in the car fired weapons. Third, the defendant had possession of at least one of the firearms used during those shootings, given that his DNA was found on the gun, as described above. The seriousness of that conduct cannot be overstated — indeed, it is only as a result of the miracle of the shooters' bad aim that no one was killed in the subsequent drive-by shootings. The defendant's role in these three shootings demonstrates the dangerousness of his conduct and his callousness towards human life.

A 420-month sentence also serves the critical need for deterrence and to protect the community from the defendant. See 18 U.S.C. § 3553(a)(2)(B), (C). As to the defendant, given his commitment to the gang and repeated violent conduct, an appropriately serious sentence is necessary to dissuade him from future criminal acts and to protect the community from other violence he might commit. As discussed herein, in addition to the serious crimes for which he was convicted in this case, the defendant also had involvement in the July 24, 2020 shootings, further demonstrating the defendant's disregard for human life. In addition, the defendant was on New York State parole at the time of the four shootings following his most recent felony convictions, which appear to have done nothing to deter him from dedicating his life to the gang and to gun violence.

It is also important for the Court's sentence to send a message to other gang members and individuals who would engage in casual gunplay that such conduct will not be tolerated. As this case demonstrates, NLC members and associates like the defendant have come to believe that shootings are a way to gain status and honor. That glorification of violence lures other young people into gangs and leads to a continuing cycle of violence, all to the detriment of the broader community. An appropriately serious sentence here is necessary to help make clear that those who commit such violence, rather than being valorized, will instead be held fully accountable for the harms they inflict.

6

Moreover, a 420-month sentence will also appropriately account for the history and characteristics of the defendant.  See 18 U.S.C. § 3553(a)(1).  The defendant has three prior felony convictions, the offense conduct and sentences of which span essentially the entire period between 2013 and the present, demonstrating the defendant's commitment to a life of crime.  The defendant's age, children and family support all failed to dissuade the defendant from engaging in the dangerous and violent conduct proven at trial, demonstrating that none of the kinds of circumstances that normally dissuade individuals from criminality were sufficient to mitigate the defendant's dangerousness.

Finally, a 420-month sentence is both substantially below the Guidelines range and would avoid any unwarranted disparity with the defendant's co-defendants.  The defendant is a leader of NLC with a Guidelines range of 600 months to life, but a sentence of 420 months (or 35 years) is appropriate considering the factors set forth above and the sentences of his co-defendants who proceeded to trial, including defendant Bailey who received 413 months' imprisonment.

Accordingly, the sentencing factors set forth in Title 18, United States Code, Section 3553(a), weigh in favor of 420 months' imprisonment.  Such a sentence accurately balances the seriousness of the defendant's offense and other misconduct with the defendant's history and characteristics, will serve to deter other individuals from similarly engaging in such conduct, and avoids unwarranted sentencing disparities.  See 18 U.S.C. § 3553(a)(1), (a)(2)(A)-(C), (6).

IV.      Conclusion

For the foregoing reasons, the government respectfully submits that a sentence of 420 months' imprisonment, which includes two consecutive 120-month sentences on Counts Fifteen and Twenty, would be sufficient, but not greater than necessary, to achieve the goals of sentencing in this case.[4]

                                            Respectfully submitted,

                                            BREON PEACE
                                            United States Attorney

By:    /s/
                                            Jonathan Siegel
                                            Dana Rehnquist
                                            Sophia M. Suarez
                                            Assistant U.S. Attorneys
                                            (718) 254-6293 (Siegel)

cc:      Clerk of the Court (WFK) (by ECF)
         Jacqueline Cistaro, Esq. (by ECF and Email)
         Jaime L. Turton, United States Probation Officer (by Email)

---

[4]     Accordingly, the government respectfully requests that the Court impose a 420-month sentence as follows: (1) 120 months on Count 10; (2) 36 months on Count 12; (3) 60 months on Count 13; (4) 60 months on Count 14; (5) 60 months on Count 18; (6) 60 months on Count 19; (7) 120 months on Count 15; and (8) 120 months on Count 20. Counts 10 and 12 should run concurrently to each other and consecutive to all other counts; Counts 13, 14, 18 and 19 should run concurrently to each other and consecutive to all other counts; Count 15 should run consecutive to all other counts; and Count 20 should run consecutive to all other counts.