UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

UNITED STATES OF AMERICA,

                                                                  **MEMORANDUM & ORDER**

    v.                                                          20-CR-293 (WFK)

JEAN FREMONT,

                Defendant.
------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**
On November 18, 2022, Defendant was convicted by a jury on eight counts of a 20-count Superseding Indictment, specifically: Count 10, conspiracy to murder rival gang members, in violation of New York Penal Law ("NYPL") §§ 125.25(1) and 105.15 and 18 U.S.C. §§ 1959(a)(5) and 2; Count 12, attempted assault with a dangerous weapon in-aid-of racketeering, in violation of NYPL §§ 120.05(2), 110.00, and 20.00 and 18 U.S.C. §§ 1959(a)(6) and 2; Counts 13 and 18, attempted murder in-aid-of racketeering, in violation of NYPL §§ 125.25(1), 110.00, and 20.00 and 18 U.S.C. §§ 1959(a)(5) and 2; Counts 14 and 19, assault with a dangerous weapon in-aid-of racketeering, in violation of NYPL §§ 120.05(2) and 20.00 and 18 U.S.C. §§ 1959(a)(3) and 2; and Counts 15 and 20, possessing, brandishing, and discharging a firearm during a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i)-(iii) and 2. Jury Verdict, ECF No. 533; *see also* Superseding Indictment, ECF No. 51. There are criminal forfeiture allegations as to each count. Superseding Indictment ¶¶ 44-45. The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is hereby sentenced to 420 months of imprisonment, to be followed by three years of supervised release with special conditions. Defendant is required to pay a mandatory special assessment of $800.00.

## I. Background

The Federal Bureau of Investigation ("FBI") and the New York City Police Department led the investigation into Defendant and other gang associates and members for the instant offense. Presentence Investigation Report ("PSR") ¶ 12, ECF No. 779. Defendant is a leader of the No Love City ("NLC") set, or neighborhood-based subgroup, of Folk Nation Gangster Disciples ("GD"), a violent street gang operating out of Brooklyn, New York. *Id.* ¶¶ 12-13. Central to GD's tenets is the use of violence to retaliate against perceived slights to the gang or

1

to enhance the status of members within the gang. *Id.* ¶ 12. NLC is based mainly around Newkirk and Flatbush Avenues. *Id.*

In November of 2020, Defendant, along with others, participated in shootings targeting rival gang members. *Id.* ¶ 14. The first two shootings, both of which were carefully orchestrated drive-by shootings, took place in Canarsie, Brooklyn on November 7, 2020. *Id.* ¶ 22. GD members arranged to have three cars participate in the shooting: one to carry the shooters, and two to act as strategic decoys. *Id.* ¶ 23. Decoys were employed to slow down the police or draw their attention away from the shooters in the event police interfered and sought to protect human life. *Id.* The convoy drove from Flatbush, Brooklyn, which is NLC territory, to Canarsie, Brooklyn, which is rival gang territory. *Id.* Upon arrival in Canarsie, the convoy drove past a crowd of people and at least two occupants of the shooter car opened fire. *Id.* No one was injured in this shooting. *Id.* Later that same day, the convoy returned to Canarsie and at least three individuals in the shooter car again opened fire into a crowd of people, non-fatally wounding two of those people. *Id.* ¶ 24. For both shootings, Defendant was in the shooter car. *See id.* ¶ 25; Government Sentencing Memorandum ("Gov't Mem.") at 2, ECF No. 792.

On November 9, 2020, Defendant participated in another carefully orchestrated drive-by shooting. PSR ¶ 30. This shooting took place in Brownsville, Brooklyn, where a two-car convoy of GD members and associates shot into a crowd of people, striking one woman. *Id.* Defendant was in the decoy car. *Id.*

On August 4, 2021, a grand jury returned a 20-count Superseding Indictment, which alleges Defendant was a member of GD. Superseding Indictment ¶¶ 1, 8. According to the Superseding Indictment, GD is an "enterprise" as defined by 18 U.S.C. § 1959(b)(2) that engaged in racketeering activity as defined in 18 U.S.C. §§ 1959(b)(1) and 1961(1). *Id.* ¶¶ 4-5.

Defendant was charged with nine counts in the Superseding Indictment: Count 10 charges Defendant with conspiracy to murder rival gang members, in violation of NYPL §§ 125.25(1) and 105.15 and 18 U.S.C. §§ 1959(a)(5) and 2; Counts 11, 13, and 18 charge Defendant with attempted murder in-aid-of racketeering, in violation of NYPL §§ 125.25(1), 110.00, and 20.00 and 18 U.S.C. §§ 1959(a)(5) and 2; Count 12 charges Defendant with attempted assault in-aid-of racketeering, in violation of NYPL §§ 120.05(2), 110.00, and 20.00 and 18 U.S.C. §§ 1959(a)(6) and 2; Counts 14 and 19 charge Defendant with assault in-aid-of racketeering, in violation of NYPL §§ 120.05(2) and 20.00 and 18 U.S.C. §§ 1959(a)(3) and 2; and Counts 15 and 20 charge Defendant with possessing, brandishing, and discharging a firearm during a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i)-(iii) and 2. Superseding Indictment ¶¶ 24-34, 39-43  The Superseding Indictment also contains a criminal forfeiture allegation as to all counts. *Id.* ¶¶ 44-45.

On August 10, 2021, FBI agents arrested Defendant without incident. PSR ¶ 45.

On November 18, 2022, Defendant was convicted on all his charged counts, except for Count 11. *See* Jury Verdict.

## II. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. §

3

3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

### III. Analysis

#### A. The Nature and Circumstances of the Offense and the History and Characteristics of Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

##### 1. Family and Personal Background

Defendant was born on June 25, 1991 in Haiti to Yvelyn and Hughes Fremont. PSR ¶ 101. Defendant has a close relationship with his mother, who is aware of the instant offense and remains supportive. *Id.* Defendant is not close with his father, and it is unclear if his father is aware of the instant offense. *Id.* Defendant has at least five siblings. *See id.* ¶ 102; *see also* Defense Sentencing Memorandum ("Def. Mem.") at 6, ECF No. 797.

After witnessing horrific violence as a young child in Haiti, Def. Mem. at 7, Defendant relocated to the United States in 1996 with his mother and siblings, PSR ¶ 103. Defendant, who was primarily raised by his mother, moved frequently and lived in various states during his childhood. *Id.*; *see also* Def. Mem. at 5-6. Defendant reported these frequent relocations made

his childhood difficult, and informed Probation of two instances of unreported physical abuse at the hands of male relatives. PSR ¶ 103; *see also* Def. Mem. at 5-6.

Defendant married Tishana Champagne in 2018 in Brooklyn, New York. *Id.* ¶ 104. Ms. Champagne is aware of the instant offense and remains supportive. *Id.* Defendant and Ms. Champagne share a young daughter, with whom Defendant shares a close relationship. *Id.* Defendant's daughter is aware her father is incarcerated but does not know the details of the instant offense. *Id.* Defendant has a second daughter from a previous relationship, who is aware of Defendant's incarceration but is unaware of the details of the instant offense. *Id.* ¶ 106.

### 2. Educational and Employment History

Defendant reported earning his GED in 2012 and reported attending Eramus High School in Brooklyn, New York until 12th grade. *Id.* ¶¶ 114-15.

Defendant was unemployed from 2020 through his arrest for the instant offense. *Id.* ¶ 117. Defendant reported previous employment as a construction flagger, a hospital patient transporter, and in an ice-cream shop. *Id.* ¶¶ 118, 120-21. Defendant's wife reported Defendant was unemployed from 2009 through 2019. *Id.* ¶ 119.

### 3. Prior Convictions

In addition to three prior misdemeanor convictions, Defendant has three prior felony convictions: (1) Criminal Possession of a Weapon in the Second Degree; (2) Attempted Criminal Possession of a Weapon in the Second Degree; and (3) Conspiracy in the Fourth Degree. *Id.* ¶¶ 88-92. Defendant was on parole for his Attempted Criminal Possession of a Weapon conviction when he committed the instant offenses. *See id.* ¶ 90; Gov't Mem. at 6.

### 4. Physical and Mental Health

Defendant is in good health and has no history of serious or chronic physical medical conditions. *Id.* ¶ 109. While Defendant has no history of serious or chronic mental health conditions, Defendant reported he sought mental healthcare while incarcerated to treat anxiety and depression symptoms. *Id.* ¶¶ 110-11.

    5.    Substance Abuse

Defendant began using marijuana in his teens, and reported smoking daily after his late teens. *Id.* ¶ 112; *see also* Def. Mem. at 7 (noting Defendant began using marijuana daily when he was 14 years old). Defendant last smoked marijuana on the day of his arrest, and reported participating in at least three substance abuse programs. PSR ¶¶ 112-13.

    6.    Nature and Circumstances of the Offense

The Court's previous statements make clear the nature and circumstances surrounding the instant offense. *See supra* Part I.

    **B.**    **The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offenses, which involved participation in three different gang-related shootings. *See supra* Part I. *See id.* While Defendant and other individuals connected to GD were supposedly targeting rival gang members, they actually opened fire into crowds of people, shooting indiscriminately. *Id.*

6

Defendant was in the shooter car in both November 7, 2020 drive-by shootings. *Id.* Moreover, Defendant was not just an NLC member: he was a leader of the set. *Id.* The Court's sentence will deter others from engaging in similar acts and justly punishes Defendant for his crimes.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant was convicted of eight counts of the Superseding Indictment: Count 10, conspiracy to murder rival gang members; Count 12, attempted assault with a dangerous weapon in-aid-of racketeering; Counts 13 and 18, each charging attempted murder in-aid-of racketeering; Counts 14 and 19, each charging assault with a dangerous weapon in-aid-of racketeering; and Counts 15 and 20, each charging possessing, brandishing, and discharging a firearm during a crime of violence. *See* Jury Verdict.

For Counts 10, 13, and 18, Defendant faces a maximum term of imprisonment of ten years and no minimum term of imprisonment on each count. 18 U.S.C. § 1959(a)(5). Defendant also faces a maximum term of supervised release of three years. 18 U.S.C. § 3583(b)(2). If a condition of release is violated, Defendant may be sentenced to up to two years without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. § 3583(e).

For Count 12, Defendant faces a maximum term of imprisonment of three years and no minimum term of imprisonment on each count. 18 U.S.C. § 1959(a)(6). Defendant also faces a maximum term of supervised release of one year. 18 U.S.C. § 3583(b)(3). If a condition of release is violated, Defendant may be sentenced to up to one year without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. § 3583(e).

For Counts 14 and 19, Defendant faces a maximum term of imprisonment of 20 years and no minimum term of imprisonment on each count. 18 U.S.C. § 1959(a)(3). Defendant also faces a maximum term of supervised release of three years. 18 U.S.C. § 3583(b)(2). If a condition of release is violated, Defendant may be sentenced to up to two years without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. § 3583(e).

For Counts 15 and 20, Defendant faces a minimum term of imprisonment of ten years and a maximum term of life. 18 U.S.C. § 924(c)(1)(A)(iii); *United States v. Johnson*, 507 F.3d 793, 798-99 (2d Cir. 2007). The terms of imprisonment on Counts 15 and 20 must run consecutively to all other counts. 18 U.S.C. § 924(c)(1)(D)(ii). Defendant also faces a maximum term of supervised release of five years. 18 U.S.C. § 3583(b)(1). If a condition of release is violated, Defendant may be sentenced to up to five years of imprisonment without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. § 3583(e).

Defendant is ineligible for probation on all counts. 18 U.S.C. §§ 3561(a)(2), 3561(a)(3), and 924(c)(1)(D)(ii).

In addition to facing terms of imprisonment and supervised release, Defendant faces numerous other penalties. Defendant faces a maximum fine of $250,000.00 on each count pursuant to 18 U.S.C. § 3571(b). However, Defendant appears unable to pay a fine. PSR ¶ 126; *see also* Def. Mem. at 2. The Court is required to impose a mandatory special assessment of $100.00 per count pursuant to 18 U.S.C. § 3013(a)(2)(A). Defendant's counts of conviction are subject to forfeiture allegations. *See* Superseding Indictment ¶¶ 44-45. Pursuant to 18 U.S.C. § 3663A, Defendant also faces mandatory restitution in this case. However, the amount of restitution is not yet determinable. PSR ¶ 149. Pursuant to guidance from *United States v. Catoggio*, 326 F.3d 323 (2d Cir. 2003), restitution should not be ordered when losses incurred by

the victim are not identified. The Court reserves its right pursuant to 18 U.S.C. § 3664(d)(5) to hold an evidentiary hearing within 90 days after this sentencing to determine the specific amounts owed to Defendant's victims.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." *Id.* § 3553(a)(4)(A).

Probation and the Government argue the applicable Guideline for Counts 10, 12, 13, 14, 18, and 19 is U.S.S.G. §2E1.3(a)(2), which directs that the base offense level is the offense level applicable to the underlying crime or racketeering activity, since it is greater than level 12. Because the underlying crime for each count is attempted murder,[1] the applicable Guideline for each count is U.S.S.G. §2A2.1(a)(1), which provides for a base offense level of 33. Pursuant to U.S.S.G. §3B1.1(a), four additional levels are added for each count because Fremont was a leader or organizer of criminal activity involving five or more people or was otherwise extensive.

---

[1] Government argues the trial evidence established the first November 7, 2020 shooting was an attempted murder by the preponderance of the evidence, thus warranting the attempted murder cross-reference in relation to Count 12. Gov't Mem. at 5 n.3. Probation applies the attempted murder cross-reference in its calculations. PSR ¶¶ 48, 60. The Government acknowledges whether the Court applies such a cross-reference "makes no difference to the defendant's ultimate Guidelines range" according to the Government's and Probation's Guidelines calculations. Gov't Mem. at 5 n.3. Defense counsel does not object to the application of the attempted murder cross-reference. Def. Mem. at 2-3. The Court finds, by a preponderance of the trial evidence, Defendant acted with a specific intent to kill to support applying the attempted murder cross-reference to Count 12. As described above, Defendant was in the shooter car in a three-car convoy—so designed to allow the shooters to escape—to rival gang territory. Surveillance video admitted at trial shows the shooter car pulled up to a car behind which young men were standing and slowed down. *See* GX 6030, file name 1606275938247_frontporch_avi; Tr. 1066-69. Once the car slowed down, individuals inside the car opened fire. *Id.* The shooter car then sped off. *See* GX 6030, file name 1606275938247_frontporch_avi. This and other evidence presented at trial supporting both the motivations for these shootings and Defendant's participation therein show Defendant acted with a specific intent to kill by a preponderance of the evidence. Therefore, the Court applies the attempted murder cross-reference for Count 12. *See also United States v. Vaughn*, 430 F.3d 518, 527 (2d Cir. 2005).

The applicable Guideline for Counts 15 and 20 is U.S.S.G. §2K2.4, which provides that the Guidelines sentence is the statutory mandatory minimum. The mandatory minimum for violations of 18 U.S.C. § 924(c)(1)(A)(iii) is 10 years, or 120 months. Pursuant to Note 2(A) to U.S.S.G. §2K2.4, imprisonment imposed for this offense must run consecutively to any other term of imprisonment.

Pursuant to the Multiple Count Analysis laid out in U.S.S.G. §3D1.4, the combined offense level is determined by taking the highest offense level of the group and increasing that by a certain number based on how many "units" exist across counts. In this instance, application of the grouping rules under U.S.S.G. §3D1.2 yields three groups: Group 1 – Counts 10 and 12; Group 2 – Counts 13 and 14; and Group 3 – Counts 18 and 19. Because each group has an offense level of 37—the highest offense level—each group counts for one unit. U.S.S.G. §3D1.4(a). The total number of units is therefore three, which amounts to three additional levels pursuant to U.S.S.G. §3D1.4. Counts 15 and 20 are not included in the multiple count analysis pursuant to U.S.S.G. §2K2.4(b). This brings the combined adjusted offense level to 40.

Defense counsel agrees with most of the Government's and Probation's calculations. However, defense counsel objects to applying the four-level leadership enhancement, arguing Defendant was "not an active participant in the gang at the time of the offenses," "the evidence failed to establish [Defendant] had an active role, which included the supervision of younger or less established members" in GD or NLC, and the Government's evidence—including a hierarchy of gang members—in fact proved Defendant "was not a leader." Def. Mem. at 2. Without the four-level leadership enhancement, based on the Court's calculations, Defendant's total adjusted offense level would be 36.

Probation calculates Defendant's criminal history score as ten. PSR ¶ 95. Pursuant to the Sentencing Table in Chapter Five, Part A of the Guidelines, a criminal history score of ten results in a criminal history category of V. U.S.S.G. §5A. All parties agree with Probation's criminal history calculation. *See* Gov't Mem. at 6; Def. Mem. at 4.

Under Probation's and the Government's calculations, a total adjusted offense level of 40, combined with a criminal history category of V, results in a recommended Guidelines range of imprisonment of 360 months to life. PSR ¶ 131; Gov't Mem. at 6. Because an additional 120 months must be added for each of Counts 15 and 20, which each carry a mandatory minimum of ten years that must run consecutively to all other counts, the effective Guidelines range is between 600 months to life imprisonment. PSR ¶ 131; Gov't Mem. at 6.

Under defense counsel's calculations as done by the Court, a total adjusted offense level of 36, combined with a criminal history category of V, results in a recommended Guidelines range of imprisonment of 292 to 365 months. *See* Def. Mem. at 2. With the additional 120 months for each of Counts 15 and 20, the effective Guidelines range suggested by defense counsel is between 532 and 605 months of imprisonment. *See id.*

Probation contends an upward departure may be warranted pursuant to U.S.S.G. §5K2.0 and Application Note 2 to U.S.S.G. §2A2.1 because Defendant's actions created a substantial risk of death or serious injury to more than one person. PSR ¶ 151.

The Court agrees with the Government and Probation: Defendant qualifies for the organizer or leader enhancement under U.S.S.G. §3B1.1(a). First, Christian Williams testified Defendant was a "top leader" of the gang who had "authority" therein. Tr. 321, 340. Second, a gang "line up," or list of gang members and their positions, *see* Tr. 317-18, showed Defendant as one of the individuals NLC's leader wanted in "position and authority at the time," Tr. 320-21

(discussing GX 19105E). Moreover, while defense counsel asserts GX19105E showed Defendant "had not one gang member listed under his name," Def. Mem. at 1; *see* Tr. 658-59 ("Q[:] And [Defendant] has no names of anyone that he is to supervise, correct? A[:] Yes."), the Government elicited testimony that two names were in fact listed below Defendant on the line-up, Tr. 2616 ("[Q]: Under [Jean Fremont also known as] Juno are there names?" A[:] As you traverse towards the middle of the sheet yes, two names below Juno, Jrock and Slim."). As such, the Court finds the leadership or organizational enhancement is properly applied to Defendant. *See* Application Note 2 to U.S.S.G. §3B1.1 ("To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants."); Application Note 4 to U.S.S.G. §3B1.1 ("In distinguishing a leadership and organizational role from one of mere management or supervision," Courts should consider, *inter alia*, "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others."). Moreover, even if Defendant did not qualify for this enhancement, Application Note 2 to U.S.S.G. §3B1.1 allows for an upward departure "in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization." The Court adopts the Government's and Probation's Guidelines calculations in full.

The parties' recommendations as to an appropriate sentence vary. Probation recommends: a below-Guidelines sentence of 360 months of imprisonment; three years of supervised release with special conditions; and payment of the mandatory $800.00 special

assessment. Probation Recommendation at 1-2, ECF No. 779-1. Probation does not recommend a fine, as it appears Defendant is unable to pay. *Id.* at 4. Probation recommends Defendant be excused from the mandatory drug testing provisions of supervised release. *Id.* at 2. In recommending this sentence, Probation emphasizes the severity of the instant offense, which manifested a clear disregard for human lives; Defendant's role as an NLC leader; Defendant's direct participation in these shootings; and the need to avoid unwarranted sentencing disparities. *Id.* at 3.

Defense counsel requests a below-Guidelines sentence. Def. Mem. at 1. At sentencing, defense counsel requested a sentence of 20 years. Defense counsel argues such a sentence is warranted in light of Defendant's difficult childhood, *id.* at 5-6; Defendant's "horrendous" conditions of incarceration at the Hudson County Correctional Center during Covid-19, *id.* at 7-8; Defendant's close family ties, *id.* at 8; and prison's limited ability to help those incarcerated, *id.* at 9. Ultimately, defense counsel argues Defendant "is human, imperfect, and deserves a chance to prove that he can be rehabilitated and return to society as a law-abiding citizen." *Id.* at 1.

This Court has read and considered the letters written by Defendant's family members, friends, and supporters. *See* Ex. A to Def. Mem., ECF No. 797-1. The Court has also reviewed the transcript of courses Defendant completed while incarcerated. Ex. B to Def. Mem., ECF No. 797-2. The letters ask the Court for leniency and describe Defendant as a good man and a loving and committed father, uncle, and brother. *See* Ex. A to Def. Mem. The Court appreciates what Defendant's advocates have said on his behalf.

The Government recommends a below-Guidelines sentence of 420 months of incarceration. Gov't Mem. at 1. The Government bases this recommendation on: "the

extraordinary seriousness of the defendant's offense," with Defendant's participation in three gang shootings—during which he was twice in the shooter car—over a period of two days demonstrating "his callousness towards human life," *id.* at 6; the need to send a general deterrent message that gang violence will be punished, *id.*; the need to specifically deter this Defendant from future criminal conduct, particularly in light of Defendant's uncharged involvement in an earlier gang-related shooting and Defendant committing the instant offenses while on probation, *id.*; Defendant's history and characteristics, including his three prior felony convictions; *id.* at 7; and the need to avoid unwarranted sentencing disparities with Defendant's co-defendants, *id.*

This Court appreciates the sentencing arguments raised by all parties and has considered each of these arguments in turn.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

The parties have not explicitly drawn the Court's attention to other applicable policy statements. Finding none on its own, the Court proceeds to the next § 3553(a) factor.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

The Court considers the Government's arguments regarding unwarranted sentencing disparities in this case. The Government notes its sentencing recommendation "is both substantially below the Guidelines range and would avoid any unwarranted disparity with the defendant's co-defendants." Gov't Mem. at 7. The Government specifically argues a 420-month

sentence would appropriately account for Defendant's conduct and leadership in NLC and is in line with the "sentences of his co-defendants who proceeded to trial," highlighting Defendant Bailey's sentence of 413 months of imprisonment. *Id.* For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G.   The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7).

As explained previously, restitution is mandatory in this case pursuant to 18 U.S.C. § 3663A. The Court reserves its right pursuant to 18 U.S.C. § 3664(d)(5) to hold an evidentiary hearing within 90 days after this sentencing to determine the specific amounts owed to Defendant's victims.

### IV. CONCLUSION

For the reasons set forth above, the Court imposes a sentence of 420 months of imprisonment; three years of supervised release with both the standard conditions of supervised release and special conditions; and the mandatory $800.00 special assessment. This sentence is sufficient but no greater than necessary to accomplish the purposes of § 3553(a)(2). The Court does not impose a fine given Defendant's apparent inability to pay. The Court excuses Defendant from the mandatory drug testing provisions of 18 U.S.C. §§ 3563(a)(5) and 3583(d).

The Court expressly adopts the factual findings of the Presentence Investigation Report, as corrected herein, to the extent those findings are not inconsistent with this opinion.

SO ORDERED.



HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: May 30, 2024
Brooklyn, New York